IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

COLUMBIA GAS TRANSMISSION,
LLC,

    *Plaintiff*,

    v.

76 ACRES MORE OR LESS, IN
BALTIMORE AND HARFORD
COUNTIES, MARYLAND,

    *Defendant*.

Civil Action No. ELH-14-0110

## MEMORANDUM OPINION

Columbia Gas Transmission, LLC ("Columbia") filed a Complaint in Condemnation, supported by voluminous exhibits, naming 30 defendant landowners. ECF 1. In its suit, Columbia seeks to exercise the power of eminent domain, pursuant to the Natural Gas Act, 15 U.S.C. § 717, to acquire permanent and temporary construction easements over defendants' parcels of real property, located in Baltimore County and Harford County, Maryland, so as to construct and operate a natural gas pipeline, Line MB. Line MB would supplement and provide redundancy with respect to an existing pipeline, Line MA. The Federal Energy Regulatory Commission ("FERC") has issued a certificate authorizing Columbia "to construct and operate pipeline facilities to extend its Line MB to loop part of its Line MA," and has approved the route proposed by Columbia. Certificate, ECF 1-18 at 1. Although Line MB will be approximately 21 miles long, this case concerns only a 5-mile stretch of Line MB.

Subsequent to filing suit, Columbia voluntarily dismissed its claims as to eleven defendants, presumably because Columbia reached agreements with those defendants regarding the easements. ECF 9, 15, 20, 23, 29. One landowner, Robert Boyer, Jr., was served on June 3, 2014 and has not yet answered. Columbia has filed a Motion for Entry of Default as to Mr. Boyer, ECF 72, but he is not the subject of the motions currently at issue. Five landowners—John Hagan, Robert Hagan, Donald Rocker, Marco Zamora, and Maria Zizelman (collectively, the "Default Judgment Defendants")—were the subject of a motion for default judgment (ECF 48), which was referred to Judge Gallagher. On June 25, 2014, Judge Gallagher issued a Report and Recommendations on the Motion for Default Judgment, which recommended that the Motion for Default Judgment be granted. ECF 67. The time for objections to the Report and Recommendations has not yet expired. *See* Local Rule 301.5(b).

The other thirteen defendants are: Marital Trust Under Will of Gerald J. Stautberg ("Stautberg Trust"); William R. Cole; Robert DeGraw and Deborah DeGraw (the "DeGraws"); Lambert Boyce, Jr. and Ledley Byrd Boyce (the "Boyces"); Wilfred Turk and Nancy Turk (the "Turks"); Margaret Kenney; John Thomas Reed and Katherine Gayle Reed (the "Reeds"); and James A. Quick and Susan W. Quick (the "Quicks"). As to these thirteen defendants, whom I will to refer to as the "MPSJ Defendants," Columbia has filed a Motion for Partial Summary Judgment ("MPSJ," ECF 41), which seeks an order confirming Columbia's substantive right to condemn the property of the MPSJ Defendants (the "Properties"). The MPSJ is supported by a memorandum of law ("MPSJ Memo," ECF 41-1) and the Affidavit of Michael S. McClain, Project Land Manager for Columbia ("McClain Aff. 1," ECF 41-2).

Columbia has also filed a "Motion for Immediate Possession" ("MIP," ECF 42), which seeks an order, in the form of a preliminary injunction, permitting Columbia to immediately possess the easements over the property of both the MPSJ Defendants and the Default Judgment Defendants, *i.e.*, to do so prior to determination and payment of just compensation to the landowners.  The MIP is supported by a memorandum of law ("MIP Memo," ECF 42-1) and a second Affidavit of Michael S. McClain ("McClain Aff. 2," ECF 42-2).  In the context of the MIP, I will refer to both groups of defendants collectively as the "MIP Defendants."

Several defendants have interposed objections to the MPSJ and MIP.  Oppositions have been filed by the Stautberg Trust (ECF 50), William R. Cole (ECF 51), and the DeGraws (ECF 52, 53).  Additionally, a joint opposition has been filed by the Boyces, the Turks, and Ms. Kenney (ECF 54).  The Reeds have not filed oppositions, nor have any of the Default Judgment Defendants.  And, by way of a "Line" filed on June 18, 2014 (ECF 63), the Quicks advised that they do not oppose plaintiff's motions.[1]  Columbia filed a consolidated Reply in support of its motions (ECF 57), with one exhibit.

The Court held an evidentiary hearing on June 20, 2014.  Counsel for Columbia and attorneys for the Stautberg Trust, Mr. Cole, the DeGraws, the Boyces, the Turks, and Ms. Kenney[2] all appeared at the hearing, either in person or telephonically.

---

[1] The defendants who filed oppositions raise similar and often overlapping arguments. Although I will identify which defendants make which particular arguments, I will also, for convenience, use the shorthand term "Defendants" when describing arguments made by one or several of the MPSJ or MIP Defendants.

[2] No transcript is available at this time.  Therefore, in writing this Opinion, I have relied on my notes from the hearing.

For the reasons that follow, I will grant the MPSJ.   And, as discussed, *infra*, upon resolution of the issue of an appropriate bond, I will grant the MIP.

**Discussion**

1.

In its MPSJ, Columbia seeks an order confirming its right to acquire easements over the Properties, as well as the right of ingress and egress with regard to the temporary easements.   In particular, Columbia seeks a "permanent and exclusive easement and right-of-way to construct, operate, maintain, replace, repair, remove, or abandon Line MB, for a total of fifty feet (50') in width, measured twenty five feet (25') to the center of Line MB on each side thereof . . . ." Complaint ¶ 32.   Additionally, Columbia seeks temporary construction easements of "twenty-five (25) to fifty (50) feet on either side of and adjoining the permanent easements [which] serve the purpose of enabling Columbia to construct Line MB or to later relocate the pipeline or lay additional pipelines and to conduct all activities incident thereto, including restoration or clean-up activities."  *Id.* ¶ 31.   The FERC Certificate notes that "Columbia's 75-foot construction right-of-way and 50-foot permanent easement widths are typical widths used industry-wide to ensure safe working conditions minimize encroachment on the pipeline."  Certificate ¶ 114.

Of course, the Fifth Amendment to the United States Constitution is pertinent.  It states, in part: "[P]rivate property [shall not] be taken for public use, without just compensation."  But, more specifically, the Natural Gas Act, 15 U.S.C. § 717, and Federal Rule of Civil Procedure 71.1 frame the analysis.

The Natural Gas Act, 15 U.S.C. § 717f(h), states:

"When any holder of a certificate of public convenience and necessity
cannot acquire by contract, or is unable to agree with the owner of property to the

- 4 -

compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts."

Fed. R. Civ. P. 71.1 provides:

(a) Applicability of Other Rules. These rules govern proceedings to condemn real and personal property by eminent domain, except as this rule provides otherwise.
. . .

(c) Complaint.
. . .

> (2) *Contents.* The complaint must contain a short and plain statement of the following:
>
> (A) the authority for the taking;
> (B) the uses for which the property is to be taken;
> (C) a description sufficient to identify the property;
> (D) the interests to be acquired; and
> (E) for each piece of property, a designation of each defendant who has been joined as an owner or owner of an interest in it.

"Anyone who wishes to construct a natural gas pipeline in the United States must first obtain a certificate of public convenience and necessity from the Federal Energy Regulatory Commission ('FERC'), the federal agency responsible for supervising and coordinating the production of energy in the United States." *Alliance Pipeline L.P. v. 4.360 Acres of Land, More or Less, in S/2 of Section 29, Twp. 163 N., Range 85 W., Renville Cnty., N.D.*, 746 F.3d 362, 364 (8th Cir. 2014) (citing 15 U.S.C. § 717f(c)–(e)).   If the recipient of a certificate requires easements to construct its pipeline, and cannot acquire them by contract, the recipient may acquire the easements "by the exercise of the right of eminent domain in the district court of the

United States for the district in which such property may be located, or in the State courts."  15 U.S.C. § 717f.

"A district court's role in proceedings involving FERC certificates is circumscribed by statute."  *Millennium Pipeline Co., L.L.C. v. Certain Permanent & Temp. Easements*, 777 F. Supp. 2d 475, 481 (W.D.N.Y. 2011), *aff'd*, 552 F. App'x 37 (2d Cir. 2014).  The district court's role is simply to evaluate the scope of the certificate and to order condemnation of property as authorized in the certificate.  *USG Pipeline Co. v. 1.74 Acres in Marion Cnty., Tenn.*, 1 F. Supp. 2d 816, 821 (E.D. Tenn. 1998).  Disputes over the reasons and procedures for issuing certificates of public convenience and necessity must be brought to the FERC.  15 U.S.C. § 717r(a).  Appeals may thereafter be brought to a United States Court of Appeals.  15 U.S.C. § 717r(b).  Thus, when a landowner contends that the certificate holder is not in compliance with the certificate, that challenge must be made to FERC, not the district court.

As noted, a holder of a FERC certificate of public convenience and necessity that "cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas . . . may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located . . . ."  15 U.S.C. § 717f(h).  It is undisputed that Columbia holds a FERC certificate.  It is also clear that Columbia has proposed, but has not reached, private agreements with the Defendants.  *See* McClain Aff. 1 at ¶¶ 33–35 (averring that Columbia sent offers to the landowners, who did not accept those offers); ECF 1-19–1-35 (proposed agreements).  However, Defendants lodge several objections to Columbia's MPSJ, which I will address in turn.

A.

With regard to property in Harford County, Mr. Cole (ECF 51) and the Boyces, Turks, and Ms. Kenney (ECF 54), argue that Columbia cannot satisfy the terms of the FERC Certificate and therefore cannot proceed with construction.  Accordingly, the argument goes, Columbia is not entitled to partial summary judgment.  However, as Defendants acknowledged at the hearing, this argument has been rendered moot by recent developments.  I explain below.

The FERC Certificate states, as Environmental Condition 17 of the Certificate, ECF 1-18 at 52 (emphasis added): "Prior to construction, Columbia shall file documentation showing that the plats with adjusted septic reserve areas have been *re-filed with and approved by* Harford County for the properties [located in Harford County]."  Thus, under the terms of the original Certificate, revised plats must be approved by Harford County before Columbia can proceed with the project.

Columbia was unable to comply with this condition for two reasons.  First, Harford County only approves revised plats submitted by the landowner.  ECF 51-4.  However, the landowners refused to file the revised plats on Columbia's behalf, and Columbia does not have any legal means to force the landowners to file revised plats.  Second, the Harford County Department of Health has refused to sign off on revised plats if a proposed pipeline is situated within 100 feet of a well.  *See* ECF 51-5.  And, the proposed easement over Mr. Cole's property falls within 100 feet of a well on the land adjacent to Mr. Cole's property.  Thus, the revised plats, even if submitted, would not be approved.  As a result of these two impediments, Fredric J. George, senior counsel for Columbia, acknowledged in a letter to FERC that "the County's

position renders Columbia's ability to comply with Condition 17 an impossibility . . . ." ECF 51-5.

However, these issues have been resolved in Columbia's favor; after Defendants' opposition briefs were filed, FERC granted Columbia's request for a modification of Condition 17.   On May 30, 2014, FERC's Director of the Office of Energy Projects sent a letter to Columbia noting that Columbia "cannot comply with the condition as it is written" and finding that "Columbia has made a reasonable attempt to comply with the intent of environmental condition 17."   ECF 57-1.   The Director then modified Condition 17 to require only that Columbia "file with the Secretary of [FERC] documentation showing that the plats with adjusted septic reserve areas have been provided to Harford County, and [that Columbia] file any information regarding further discussions with Harford County and the affected landowners."   *Id.* Pursuant to this modification, Columbia no longer needs County approval of the revised plats, rendering moot Defendants' arguments regarding Columbia's inability to comply with Condition 17.

## B.

The Stautberg Trust (ECF 50), the DeGraws (ECF 52), and the Boyces, Turks, and Ms. Kenney (ECF 54), contend that Columbia failed adequately to identify the proposed easements, as required by Fed. R. Civ. P. 71.1.   In other words, they claim the property descriptions provided by Columbia are legally deficient.   Although Columbia may have provided less detail than was provided in the cases on which it relies, Defendants have not cited any federal cases— nor has the Court found any—in which condemnation was denied because the description of the

easements was insufficient.   Moreover, the requirements of Fed. R. Civ. P. 71.1 are not as stringent as Defendants suggest.

Columbia provided essentially the same type of information for each piece of land over which it seeks an easement.  The Complaint includes the parcel number and liber folio number of each property for which Columbia seeks easements, as well as the precise size of the easements it seeks.  Moreover, Columbia attached to its Complaint two types of maps purporting to depict each of the proposed easements.   One set of maps are "lot and block" maps, identifying the particular lot over which Columbia seeks an easement.  *See, e.g.*, ECF 1-5.  The second set of maps are diagrams purporting to show the path of the pipeline and proposed easement on each piece of affected land.  To be sure, these diagrams do not contain a surveyor's certificate or legal description (*i.e.* metes and bounds) of the property to be taken.   In fact, the diagrams expressly state, *id.*: "Provided for general discussion purposes only.   Formal route location to be established if FERC approval is received.   This is not a survey product.   It should not be used for authoritative definition of legal boundary, or property title."

The information provided with regard to the DeGraws' property, and the location of the proposed easements thereon, constitutes a representative example of the descriptions provided by Columbia.  The Complaint states, in ¶¶ 9 and 33:

> The De Graws [sic] are . . .  record owners of a certain parcel of real property in the Fourth Election District, Harford County, Maryland, described as Parcel Identification Number 04-075412, as is more particularly described in a deed recorded in the land records of Harford County, Maryland, in Liber 2729, Folio 319 and comprising nine (9) acres, more or less.

* * *

Columbia seeks to acquire the following rights, more or less . . . (a) Permanent Easement: 0.11 acres; (b) Temporary Easement 0.10 acres; (c) Additional Temporary Easement 0.09 acres.

In addition, Columbia appended diagrams at ECF 1-5 and ECF 1-23, which depict the location of the pipeline and the proposed easements on the DeGraws' property. The first is a map of property lots in Harford County, with the DeGraws' highlighted. The second is a drawing of the DeGraws' property, including the location of the pipeline and proposed easements. As noted, similar maps are attached to the Complaint for each piece of property over which Columbia seeks an easement.

Rule 71.1 sets forth the requirements for a complaint in condemnation. It requires plaintiffs to include in the complaint a short and plain statement of:

(A) the authority for the taking; (B) the uses for which the property is to be taken; (C) *a description sufficient to identify the property; (D) the interests to be acquired*; and (E) for each piece of property, a designation of each defendant who has been joined as an owner or owner of an interest in it.

*Id.* (emphasis added). Rule 71.1 does not explicitly require any particular type of map, drawing, or measurement of the interests to be acquired. Nor does it require a survey adequate for recording in local land records.

Columbia refers to several cases in support of its argument that the information it has provided is sufficient. *See* ECF 57. In *Guardian Pipeline, L.L.C. v. 529.42 Acres of Land,* 210 F. Supp. 2d 971 (N.D. Ill. 2002), the Court first noted the limited role played by district courts in cases arising under the Natural Gas Act, *id.* at 974 (internal citations omitted):

The jurisdiction of this court is limited to evaluating the scope of the FERC Certificate and ordering condemnation as authorized by that certificate. The validity and conditions of the FERC Certificate cannot be collaterally attacked in district court. Review of the validity of the certificate is the exclusive

- 10 -

province of the appropriate court of appeals.   This court's role is mere enforcement.

The Court then determined that "legal descriptions and plat maps of the proposed easements" were sufficient to satisfy the plaintiff's burden to include a description of the property.   *Id.* at 975.

In *Hardy Storage Co., LLC v. An Easement to Construct, Operate & Maintain 12-Inch & 20-Inch Gas Transmission Pipelines Across Properties in Hardy Cnty., W.Va.*, 2006 WL 1004719 (N.D.W. Va. Apr. 12, 2006), the court found that exhibits attached to the plaintiff's complaint that included "brief explanations of the rights to be condemned and drawings" were "very specific with regard to sizes and locations of the easements and rights-of-way in questions."   *Id.* at *3.   Although the explanations were "brief" in regard to descriptions of property interests, the court observed that reading the explanations and drawings in conjunction very clearly identified "the sizes of the easements and rights-of-way in question," and therefore the complaint satisfied the requirements of Rule 71.1.   *Id*; *see also Southern Natural Gas Co. v. Land, Cullman County*, 197 F.3d 1368, 1375 (11th Cir. 1999) (finding that property described with legal description and plat map in conjunction with parties' decision to walk centerline of proposed easement within property boundaries is adequate to describe taking); *E. Tenn. Natural Gas, LLC v. 1.28 Acres in Smyth Cnty., Va.*, 2006 WL 1133874, at *11 (W.D. Va. Apr. 26, 2006) ("[T]he Legal Descriptions along with the attached plats meet the requirements" of Fed. R. Civ. P 71.1.).

The information Columbia has provided in this case is probably less detailed than that provided in the above-cited cases.   Unlike in *Guardian Pipeline*, for instance, Columbia has not provided legal descriptions of the proposed easements in addition to its maps; in fact, Columbia

itself notes that its drawings of the easements are not legal boundaries.  *See, e.g.*, ECF 22-3. Furthermore, it is unclear whether the maps provided here are as detailed as the maps in *Hardy Storage*, which the court described as "very specific."  Nonetheless, the information provided by Columbia satisfies Rule 71.1's requirement of "a short and plain statement of the interests to be acquired."  Columbia has identified the parcel number and liber folio number for each property, has provided a lot and block map of each property, has listed the precise size of each easement, and has submitted a diagram showing the location of the pipeline and the proposed easement on each property.  In light of this information, Defendants cannot convincingly claim that they are not on notice of the location and size of the proposed easements.  And, Defendants have not identified any cases in which a comparable description of proposed easements under the Natural Gas Act was held to be inadequate.

As for the argument advanced by the Boyces, the Turks, and Ms. Kenney that failure to attach adequate, actual maps prevents Columbia from establishing a substantive right to condemn, the cases on which they rely are inapposite because they involve natural gas storage fields rather than pipelines.  For natural gas storage fields, FERC imposes more stringent map requirements than it does for pipelines.  Also without merit is the contention, raised at the hearing, that Columbia's submissions to the Court are inadequate because they are not sufficiently detailed to be recorded in the local land records.  It may be the case that Columbia will need to produce more detailed maps in order to record its easements in the local land records, but, as noted, Rule 71.1 does not require that filings comply with local recording requirements.

C.

The DeGraws (ECF 52), as well as the Boyces, Turks, and Ms. Kenney (ECF 54), argue that the MPSJ seeks rights beyond the scope of the FERC certificate.  This argument appears to be based on Defendants' misunderstanding of Columbia's request.  Columbia has only requested an order confirming its right to condemn pursuant to the terms of the FERC Certificate.  It does not presently ask for any rights beyond the scope of the FERC Certificate.

Prior to filing suit, Columbia sent a proposed Right of Way Agreement to the affected landowners "in an effort to negotiate for permanent land rights associated with the Line MB Expansion Project."  MPSJ Memo at 9.  The proposed agreements are attached as exhibits to the Complaint.  *See, e.g.*, ECF 1-28 at 4.  Citing those proposed agreements, the DeGraws, the Boyces, the Turks, and Ms. Kenney claim that Columbia's MPSJ seeks "a host of . . . benefits not authorized by the FERC certificate or the Natural Gas Act," including the right to construct underground communications systems, the right to install fiber optic cable, the right to relocate an installed pipeline, the future right to lay additional pipelines, and a waiver of certain legal rights.  ECF 54 at 7; ECF 52 at 3–4.

Columbia does not deny that its proposed agreements would grant rights to Columbia in excess of those listed in the FERC Certificate.  However, Columbia explains that, although it provided the proposed Agreements during negotiations with Defendants, its summary judgment motion seeks only "'the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas' as described in the FERC Certificate and under the Natural Gas Act, 15 U.S.C. § 717f(h)."  *Id.* at 9 n.5.  In other words, although Columbia tried

to negotiate for rights beyond those granted in the FERC Certificate, it has asked the Court only for an order entitling it to the rights described in the FERC Certificate.

Columbia has the better of the argument, as the MPSJ seeks only "an order confirming its right to condemn the Properties pursuant to the authority conferred by 15 U.S.C. § 717f(h)." MPSJ Memo at 8. The MPSJ does not seek any rights beyond those permitted by the statute and the FERC Certificate. Thus, there is no merit to Defendants' argument that Columbia seeks more than it is allowed under the Certificate.

At the hearing, Defendants raised an argument regarding the alleged overbreadth of Columbia's proposed agreements that was not raised in the briefing on the MPSJ. In essence, Defendants asserted that, under the Natural Gas Act, a condemnor may file suit only if it "cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the *necessary* right-of-way to construct, operate, and maintain a pipe line . . . ." 15 U.S.C. § 717f(h) (emphasis added). Further, Defendants maintained that Columbia cannot satisfy this requirement because it never made an offer to the Defendants for *only* the *necessary* easements, as set forth in the Certificate.[3] Rather, they claim that Columbia made an offer for rights exceeding those that are necessary for the Line MB project or encompassed by the Certificate. Defendants allow that Columbia was permitted to commence negotiations with proposed agreements providing Columbia greater rights than those contained in the FERC

_____

[3] Notably, Defendants offered scant evidence that their refusal to enter into agreements with Columbia was the result of the alleged overbreadth of Columbia's requests. The only landowner who proffered any evidence on this topic was Mr. Boyce, who submitted an affidavit (ECF 24-1) in connection with his Answer to the Complaint, filed on February 18, 2014 (ECF 24). Mr. Boyce was present at the hearing, and defense counsel made a proffer that Mr. Boyce would testify consistent with his affidavit. However, no other defendants offered evidence in support of a claim that Columbia's proposed agreements were rejected because of their alleged overbreadth.

Certificate.  But, they insist that, before actually filing suit, Columbia was required by the Natural Gas Act to propose agreements that would secure *only* those rights enumerated in the FERC Certificate.[4]

Defendants do not cite to any case that has interpreted the Natural Gas Act so restrictively, nor have I found any.  However, they argue that this Court must adopt their interpretation in order to prevent Columbia from using the hammer and threat of condemnation to take advantage of unsophisticated landowners or those who lack the means to challenge such conduct.  At the hearing, counsel for Defendants vehemently argued that companies such as Columbia, exercising the power of eminent domain pursuant to the Natural Gas Act, can easily take advantage of unsophisticated landowners by threatening a lawsuit if the landowners do not agree to overbroad and unfair agreements.

To be sure, the power of eminent domain is a weighty one, as it allows the condemnor to interfere with the sacrosanct property rights of a landowner.  But, the Constitution vests Congress with the power of eminent domain, and Congress has seen fit to delegate that power to private entities so that those entities can provide natural gas to the public.  It is not the Court's place to second-guess the wisdom of Congress in providing private entities with that power.  The Court's role is simply to apply the Natural Gas Act as it is written.  *See Lamie v. United States*

---

[4] Defendants do not appear to rely on the argument, which has been addressed by other courts, that the Natural Gas Act contains an implied requirement that the condemnor negotiate in good faith with the condemnee.  Rather, Defendants base their argument on the actual language of the statute and, in particular, the meaning of the word "necessary."  Even assuming that the issue of whether the Natural Gas Act contains an implied good-faith requirement were squarely presented, I agree with the holding of *E. Tenn. Natural Gas, LLC v. 1.28 Acres*, 2006 WL 1133874, at *29 (W.D. Va. Apr. 26, 2006), that "nothing in the [Natural Gas Act] or Federal Rule of Civil Procedure 71A requires the condemnor to negotiate in good faith.  All the Act requires is a showing that the plaintiff has been unable to acquire the property by contract or has been unable to agree with the owner of the property as to the compensation to be paid."

*Trustee*, 540 U.S. 526, 534 (2004) ("It is well established that when [a] statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.").

In my view, the language of the Natural Gas Act does not impose the requirement for which Defendants advocate. The statute requires Columbia to aver that it has been unable to obtain the necessary easements by private agreement with the landowners. It has done so. *See* McClain Aff. 1 at ¶¶ 33–35. The statute does not prescribe the manner in which negotiations must proceed or the form that an offer to purchase the easements must take. Columbia has made offers to the landowners but has been unable to reach private agreements by which it would secure the easements it requires. The Natural Gas Act does not require anything more.

In sum, Defendants' arguments in opposition to summary judgment do not withstand scrutiny. Therefore, Columbia is entitled to summary judgment.

II.

In addition to its MPSJ, Columbia has filed a Motion for Immediate Possession which, if granted, would allow it to take possession of the easements prior to a trial to determine just compensation. In this circuit, once a district court determines that a natural gas company possesses the right to condemn property under the Natural Gas Act, the court may grant the company immediate possession in the form of a preliminary injunction, so long as the company establishes its entitlement to a preliminary injunction. *E. Tenn. Natural Gas Co. v. Sage*, 361 F.3d 808, 827–28 (4th Cir. 2004) (citations omitted).

The MIP Defendants object to a grant of immediate possession on three separate grounds. First, the DeGraws urge the court to rule that immediate possession is unavailable under the

Natural Gas Act.  Second, the Stautberg Trust argues that a preliminary injunction would violate Maryland law.  Third, Defendants argue that Columbia has not satisfied the requirements for a preliminary injunction.

A.

"The Natural Gas Act, like most statutes giving condemnation authority to government officials or private concerns, contains no provision for quick-take or immediate possession."  *E. Tenn. Natural Gas Co. v. Sage*, 361 F.3d 808, 811 (4th Cir. 2004).  Despite the absence of a statutory right to immediate possession, Columbia asks the Court to exercise its equitable powers to grant a preliminary injunction allowing immediate possession.  In other words, Columbia argues that (1) it has a substantive right to condemn the property (as argued in the summary judgment motion); and (2) it has satisfied the requirements for a preliminary injunction.  Therefore, according to Columbia, it is entitled to exercise its right to condemn prior to a trial on just compensation, notwithstanding the absence of a statutory right of immediate possession.

The DeGraws disagree.  They contend that a judicial grant of immediate possession would conflict with Congress's decision not to create an express statutory right to immediate possession in the Natural Gas Act, thereby violating separation of powers principles.  ECF 53 at 3–10.

The DeGraws' argument was squarely rejected by the Fourth Circuit in *Sage*, 361 F.3d 808.  Although the DeGraws acknowledge that the *Sage* Court rejected an argument identical to theirs, they nonetheless ask this Court to reject the *Sage* decision because "the Supreme Court decisions requiring separation of powers take precedence over the *Sage* court decision."  ECF 53

- 17 -

at 8.  As I cannot "reject" binding Fourth Circuit precedent, I need not dwell too long on this contention.  However, I will briefly summarize the issue and the *Sage* decision.

In *Sage*, the Fourth Circuit reviewed the "mechanics of how the federal power of eminent domain is usually exercised."  *Sage*, 361 F.3d at 820.  The late Judge Michael, joined by Judges Niemeyer and Motz, explained for the Court, *id.* at 821 (citations, quotation marks, and some alterations omitted):

> Congress sometimes exercises the power of eminent domain directly by enacting a statute that appropriates specific property.  Congress's normal practice, however, is to delegate the power of eminent domain to government officers who may condemn property in the name of the United States for public use.  And Congress may . . . grant condemnation power to private corporations executing works in which the public is interested.

The *Sage* Court recognized that an eminent domain case generally proceeds down one of two procedural paths: "straight condemnation" or "quick-take."  *Id.*  Under the first method, "the action usually proceeds to a determination of just compensation and final judgment before the condemnor takes possession."  *Id.*  By contrast, under the "quick-take" method, which is prescribed mainly in the Declaration of Taking Act ("DTA"), 40 U.S.C. § 3114, applicable to the government, "the government may take possession of the condemned property at the beginning of the case."  *Sage*, 361 F.3d at 821.  Critically, the DTA only applies to condemnation proceedings "'brought by and in the name of the United States,'" making it inapplicable in *Sage*, *id.* (quoting 40 U.S.C. § 3114(a)), and inapplicable here.

In this context, the *Sage* Court considered whether "a court may use its equitable powers to grant a preliminary injunction allowing immediate possession when there is no provision for

that relief in the NGA or Rule 71A."[5]  *Id.* at 823.  The *Sage* Court reasoned that, although the

Natural Gas Act does not provide a statutory right of immediate possession, a gas company may

obtain immediate possession through the equitable remedy of a preliminary injunction.  *Id.* at

818.  It reasoned that the landowners' argument "overlooks the preliminary injunction remedy

provided in the Federal Rules of Civil Procedure that were adopted with the tacit approval of

Congress."  *Id.* at 824.  The Fourth Circuit continued, *id.*:

> Rule 71A provides . . . that the regular rules of procedure apply to any
> subject not covered by the special rule.  Fed. R. Civ. P. 71A(a).  Under the rules,
> then, a gas company with condemnation power under the NGA may apply under
> Rule 65(a) for a preliminary injunction awarding immediate possession.
> Congress has never given any indication that it disapproves of this procedure. . . .
> Indeed, because Congress has not acted to restrict the availability of Rule 65(a)'s
> equitable (injunctive) remedy in an NGA condemnation, we conclude that the rule
> applies.  *See Mitchell v. Robert De Mario Jewelry, Inc.,* 361 U.S. 288, 291 (1960)
> ("Equitable jurisdiction is not to be denied or limited in the absence of a clear and
> valid legislative command.").

Further, the Court noted that the preliminary injunction process contains procedural

safeguards that are comparable to those safeguards that apply in the context of a quick-take

proceeding under the DTA.  *Id.*  In particular, it said, *id.* at 826 (internal citations omitted):

> In an NGA condemnation where early possession is granted to a gas
> company, the landowner is protected . . . by "the rule that title does not pass until
> just compensation has been ascertained and paid."  Therefore, if the gas
> company's deposit (or bond) is less than the final compensation awarded, and the
> company fails to pay the difference within a reasonable time, "it will become a
> trespasser, and liable to be proceeded against as such."  Likewise, if a FERC-
> regulated gas company was somehow permitted to abandon a pipeline project
> (and possession) in the midst of a condemnation proceeding, the company would
> be liable to the landowner for the time it occupied the land and for any "damages
> resulting to the [land] and to fixtures and improvements, or for the cost of
> restoration."

---

[5] The current Fed. R. Civ. P. 71.1 was previously found in Rule 71A.

The DeGraws argue that the *Sage* Court's reliance on Fed. R. Civ. P. 65(a) to grant immediate possession permits "substantive rights to be created through a procedural rule, a proposition that is universally rejected."  ECF 53 at 9; *see Sage*, 361 F.3d at 823 ("Equity, in other words, may not be used to create new substantive rights.").  In this argument, the DeGraws attempt to characterize the right to immediate possession as a substantive right, separate and apart from the substantive right to condemn the land.  The *Sage* Court implicitly rejected this proposition and stressed that the relevant substantive right was the right to condemn the land; the question of *when* the condemnor could exercise that right was a *procedural* one.  *Id.* at 828.  It said, *id.*:  "Accordingly, we hold that once a district court determines that a gas company has the substantive right to condemn property under the NGA, the court may exercise equitable power to grant the remedy of immediate possession through the issuance of a preliminary injunction."

Thus, the DeGraws' argument has been squarely rejected by the Fourth ircuit. Accordingly, it is rejected here.

### B.

The Stautberg Trust argues that a preliminary injunction would be tantamount to a "quick-take" condemnation, and that a "quick-take" condemnation would violate Maryland law. ECF 50 at 4–5.  In referring to Maryland law, the Stautberg Trust relies on 15 U.S.C. § 717f(h), which provides, in relevant part: "The practice and procedure in any action or proceeding for [the purpose of eminent domain] in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated."  On this basis, the Stautberg Trust seeks to distinguish *Sage*, which arose in Virginia.

This argument fails because the portion of the statute relied upon by the Stautberg Trust conflicts with Fed. R. Civ. P. 71.1.  In particular, "Rule 71.1 of the Federal Rules of Civil Procedure sets forth the applicable procedure for this condemnation action, and supercedes the contrary provisions in 15 U.S.C. § 717f(h) requiring conformity with state practice and procedure."  *Alliance Pipeline L.P. v. 3.304 Acres of Land*, 911 F. Supp. 2d 826, 833 (D. N.D. 2012).  The Ninth Circuit has explained, *Transwestern Pipeline Co. v. 17.19 Acres of Prop. Located in Maricopa Cnty.*, 550 F.3d 770, 776 n.7 (9th Cir. 2008) (some internal citations omitted):

> While Rule 71.1 cannot provide additional substantive rights under the NGA, it seems clear that it does supercede that part of the § 717f(h) which requires the district court to "conform as nearly as may be with the practice and procedure in similar action or proceedings in the courts of the State where the property is situated."  The Supreme Court interpreted the precise language of the NGA in two other condemnation statutes and found it to be superceded by the Federal Rules of Civil Procedure.  *See Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 4 n. 2 (1984); *United States v. 93.970 Acres of Land*, 360 U.S. 328, 333 (1959).  While there is no Supreme Court holding specifically finding the condemnation provision of the NGA to be superceded by Rule 71.1, there appears to be no argument for distinguishing the NGA's language.

Similarly, the Seventh Circuit has said, *N. Border Pipeline Co. v. 64.111 Acres of Land in Will Cnty., Ill.*, 344 F.3d 693, 694 (7th Cir. 2003):

> The Rules of Civil Procedure . . . cannot "repeal" any statute. . . .  But Congress may itself decide that procedural rules in statutes should be treated as fallbacks, to apply only when rules are silent. And it has done just this, providing in what has come to be called the supersession clause of the Rules Enabling Act that "[a]ll laws in conflict with such rules shall be of no further force or effect after such rules have taken effect."  28 U.S.C. § 2072(b). . . .  Thus Rule [71.1] prevails: its nationally uniform approach conflicts with the conformity-to-state-practice approach of [15 U.S.C.] § 717f(h), and under § 2072(b) the statutory rule "shall be of no further force or effect."

- 21 -

Several other courts have reached the same conclusion.  *See S. Natural Gas Co. v. Land, Cullman Cnty.*, 197 F.3d 1368, 1372–75 (11th Cir. 1999); *Guardian Pipeline, L.L.C. v. 950.80 Acres of Land*, 210 F.Supp.2d 976, 979 (N.D. Ill. 2002); *Nat'l Fuel Gas Supply Corp. v. 138 Acres of Land,* 84 F.Supp.2d 405, 415 (W.D.N.Y. 2000).

Accordingly, the procedural requirements for this action are dictated by Fed. R. Civ. P. 71.1, not state law.  And, as I have already explained, Columbia has complied with the requirements of Rule 71.1.

Moreover, the Maryland Constitution provides only that the Maryland legislature will not take private land without first paying compensation to the landowner.  It does not create a substantive right prohibiting quick-take condemnation.  The relevant provision states, Md. Const. art. III, § 40: "The General Assembly shall enact no Law authorizing private property, to be taken for public use, without just compensation, as agreed upon between the parties, or awarded by a Jury, being first paid or tendered to the party entitled to such compensation."  This is a limitation on the state government's eminent domain power, and it is one with several exceptions.  For example, the "Maryland Constitution also authorizes certain local and state entities, including Baltimore City, to engage in 'immediate' takings."  *Edward J. Makowski v. Mayor and City Council of Baltimore*, ____ Md. _____, No. 81, Sept. Term 2013, slip op. at  20 (June 24, 2014).   The constitutional provision has no bearing here, where the federal government's eminent domain power is involved.

## C.

Because the remedy of a preliminary injunction is available, the next question is whether Columbia has demonstrated that it is entitled to that remedy.

As the Fourth Circuit observed in *Centro Tepeyac v. Montgomery County*, 722 F.3d 184, 188 (4th Cir. 2013), a preliminary injunction is "an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it." *Id.* (quotation marks and citation omitted). The movant may obtain such extraordinary relief only on a clear showing of entitlement. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam).

In order to obtain a preliminary injunction under Rule 65(a), the movant must satisfy all four factors articulated by the Supreme Court in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008): (1) that the movant is "likely to succeed on the merits," (2) that the movant is "likely to suffer irreparable harm in the absence of preliminary relief," (3) that the "balance of equities tips in [the movant's] favor," and (4) that "an injunction is in the public interest." *Accord Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013); *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011); *WV Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009); *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010), *reinstated in relevant part on remand*, *The Real Truth About Obama, Inc. v. F.E.C.*, 607 F.3d 355 (4th Cir. 2010) (per curiam).[6]

      i.     Likelihood of success on the merits

In the context of this case, this element is coextensive with the MPSJ and the Motion for Default Judgment. Given that Columbia is entitled to partial summary judgment, Columbia has

---

[6] In its initial memo, Columbia Gas referred to the preliminary injunction standard from *Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189, 193-96 (4th Cir. 1977), which has since been abrogated. Nonetheless, Columbia contended in its Reply that it satisfies the more stringent preliminary injunction test set forth in *Winter* and *Real Truth*.

shown that it will prevail on the merits as to the MPSJ Defendants.  As to the Default Judgment Defendants, I have reviewed Judge Gallagher's Report and Recommendations and find her reasoning persuasive.  None of the Default Judgment Defendants opposed the Motion for Default Judgment.  Moreover, the issues presented in the Motion for Default Judgment are essentially the same issues as those presented in the MPSJ, which I will grant.  Therefore, notwithstanding the fact that objections may still be filed to the Report and Recommendations, it is likely that Columbia will prevail on the merits with regard to the Default Judgment Defendants.

ii.     Irreparable Harm

A plaintiff seeking a preliminary injunction must make a clear showing that it will likely suffer irreparable harm in the absence of a preliminary injunction.  *Winter*, 555 U.S. at 20. Columbia contends that it will suffer irreparable harm because "a delay in the acquisition of the Easements will delay the Line MB Expansion Project."  MIP Memo at 6.  Columbia avers that it was initially scheduled to begin construction on April 1, 2014 and, accordingly, "must proceed as soon as possible."

To demonstrate the irreparable harm that it will suffer, Columbia offered the testimony of John Rinkus, a construction superintendent for Columbia.  Rinkus testified  that Line MB is necessary because Line MA is the sole source of natural gas for large portions of Baltimore and Harford Counties, but is sixty years old and potentially unreliable.  Line MB would provide a redundant source in the event that Line MA fails or is taken out of service for needed repairs. Rinkus further testified that the proposed construction of Line MB is divided into three sections, the first of which ("Section One") is at issue in this case.  Notably, the FERC Certificate expires in November 2015; by that time, all three sections must be completed.

According to Rinkus, Section One covers the area that Columbia believes is most in need of redundancy.  As a result, Columbia has obtained the requisite permits to begin construction on Section One, but has not yet secured the permits for construction on the other two sections.  Columbia's construction plan was to commence construction on June 15, 2014, and then to complete Section One by October 31, 2014.  The October 31, 2014 date was chosen, according to Rinkus, because November 1 marks the beginning of a high-demand period for natural gas and because cold weather makes construction more difficult and less safe.  As noted, Columbia must complete the other two sections by November 2015, when the FERC Certificate expires.  Rinkus also described the construction schedule with the aid of a demonstrative exhibit, which was entered into evidence as Exhibit 2.  Rinkus explained that there are designated crews for particular types of work, and that the schedule sets forth a plan which would require one crew or another to be present on each property for up to three months.

Defense counsel's cross-examination was aimed at demonstrating that Columbia would not suffer harm if it was required to delay construction on Defendants' land until after a trial on just compensation because Columbia can alter its construction schedule.  Indeed, Rinkus made several concessions that mitigated the purported urgency of Columbia's request for injunctive relief.  Rinkus stated that Columbia had already secured, through private agreement, 80% of the easements it needed for Line MB.  Thus, Columbia could promptly commence construction on the majority of Line MB, even if it was not granted immediate possession to the land at issue in this case.  Rinkus also conceded that Columbia's target date for completion of Section One, October 31, 2014, is not required by the government and is not a mandatory stop-work date.  Additionally, Rinkus acknowledged that it would be possible, albeit not efficient, practical, or

economical, to construct the *entire* 21-mile pipeline over a period of 6 months.   Similarly, Rinkus testified that, although Columbia's plan called for work on each property to last three months, it could complete work on any particular property in as little as one week.   However, Rinkus cautioned that deviations from Columbia's standard construction plan leads to greater costs and greater risk of mistakes in construction as well as the potential of injuries to Columbia's workers.

It is clear from Rinkus's testimony that, strictly as an engineering matter, Columbia does not need to immediately possess Defendants' land in order to complete Line MB before November 2015.   However, it is equally clear that such a course of action would require Columbia to expend considerable resources, deviate from its well-honed construction schedule, and possibly invite mistakes and injuries to the crew.   The relevant question, then, is whether these concerns are sufficient to satisfy the irreparable harm element of the preliminary injunction standard.

Courts in the Fourth Circuit have found similar circumstances sufficient to satisfy the "irreparable harm" element of the preliminary injunction test.   For example, in *Sage*, 361 F.3d at 828, the Fourth Circuit affirmed the district court's finding of irreparable harm, noting that the plaintiff "would suffer undue delay" without a preliminary injunction "and that this delay would cause significant financial harm both to [plaintiff] and some of its putative customers."   *Id.* at 828 (internal quotation marks omitted).   The court also noted, *id.* at 828–29 (internal citations omitted, alterations in *Sage*):

> Constructing a ninety-four-mile pipeline is a complex project that can only progress in phases.   Certain portions of the project have to be completed before construction can begin on other portions. Therefore, as the district court recognized, "any single parcel has the potential of holding up the entire project."

Continuing, the court said, "[t]o require ETNG to build up to a parcel of land [it] do[es] not possess, skip that parcel, and then continue on the other side would prove wasteful and inefficient."

Similarly, in *Columbia Gas Transmission Corp. v. An Easement to Construct, Operate, & Maintain a 24-inch Gas Transmission Pipeline Across Properties in Greene Cnty.*, 2007 WL 2220530 (W.D. Va. July 31, 2007), the court found: "Plaintiff will suffer irreparable harm [because] it will be unable to stay on schedule for the construction of the Pipelines and, therefore, may not be able to meet the time requirements contemplated by the FERC Certificate and will delay delivery of natural gas to customers who need it." *Id.* at *4.

Absent from this case is the concern expressed by the *Sage* Court that "[c]ertain portions of the project have to be completed before construction can begin on other portions." 361 F.3d at 828–29. As Rinkus testified, construction could, as an engineering matter, proceed in any order. And, perhaps, the statement in *Columbia Gas Transmission Corp.* that the plaintiff "may not be able to meet the time requirements contemplated by the FERC Certificate" is not fully applicable here, as Rinkus never testified that the November 2015 completion date would be threatened by a lack of a preliminary injunction. However, these are distinctions without a difference. It is clear that the lack of a preliminary injunction would require Columbia to modify its construction schedule, deviate from its usual course, expend additional resources, and jeopardize its ability to satisfy its obligations under both its private contracts and its FERC Certificate. It is of no moment that Columbia could, in theory, construct Line MB in a disjointed manner, temporarily skipping Defendants' parcels of land and then returning to them after a trial is held in this case. Such a course of action would be wasteful and inefficient, and it would serve

no purpose other than to delay the inevitable. Accordingly, I conclude that Columbia has clearly shown that it is likely to suffer irreparable harm without a preliminary injunction.

> iii.   Balance of Equities

Although Defendants argue that the equities weigh heavily in favor of the landowners, ECF 53 at 14, there is no indication in the record that they would suffer any greater harm if Columbia is granted immediate possession of the easements than if Columbia is not allowed access to the easements until the Court determines the amount of just compensation. Additionally, the landowners will eventually receive just compensation for the condemned land, and Columbia is "willing to deposit a sum of money representing Columbia's determined value of the Easements into a Court account or post bond as a condition of the requested relief." *Id.* This will ensure that the Landowners' interests will be protected pending a final determination of the amount of just compensation. Finally, the Boyces, Turks, and Ms. Kenney express some concern about the safety of their horses and the impact of the project on undeveloped lots and wells. ECF 54 at 14–15. But, those concerns can be addressed in the context of the court's determination of just compensation.

> iv.   Public Interest

"Congress passed the Natural Gas Act and gave gas companies condemnation power to ensure that consumers would have access to an adequate supply of natural gas at reasonable prices." *Sage*, 361 F.3d at 830. By virtue of the FERC Certificate, FERC found that the construction and operation of an expanded Line MB pipeline promoted these congressional goals. Furthermore, improvements to aging infrastructure, pipeline safety, and service reliability serve the public interest. Denying immediate access to and possession of the easements would

result in a delay in construction, thus delaying the benefit of a pipeline that improves reliability and safety.  In turn, this would pose a risk of harm to the public.  *See Sage*, 361 F.3d at 826 (recognizing the need for natural gas supply as a "substantial public interest").

For the foregoing reasons, I find that Columbia has satisfied the requirements for a preliminary injunction.

> v.      Bond.

Fed. R. Civ. P 71.1(j) requires the plaintiff in a condemnation action to "deposit with the court any money required by law as a condition to the exercise of eminent domain."  Similarly, Rule 65(c) of the Federal Rules of Civil Procedure requires that a court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  And, Columbia has represented that it is "willing to deposit a sum of money representing Columbia's determined value of the Easements into a Court account or post bond as a condition of the requested relief."  MPSJ Memo at 8.  Accordingly, prior to the entry of an order granting the MIP, Columbia will be required to post a bond in an amount approximating the value of the easements to be condemned, which will be determined after additional briefing, as outlined in the Order that accompanies this Memorandum.

## Conclusion

The Court will grant Columbia's Motion for Partial Summary Judgment.[7]  And, the Court finds that Columbia has satisfied the requirements for a preliminary injunction granting it

---

[7] Columbia requested that the Court incorporate into its Order the terms of a document entitled "Minimum Guidelines for Construction near Natural Gas Pipeline Facilities."  Columbia has not provided any authority that would justify the incorporation of that document into the

immediate possession.   However, the Court will not grant Columbia's Motion for Immediate Possession until it posts a bond securing full payment of just compensation to the landowners. An Order follows.


Date:   June 27, 2014                                    _____/s/_____
                                                        Ellen Lipton Hollander
                                                        United States District Judge

---

Court's Order, and at this juncture I decline to do so.   However, the Guidelines appear to set forth reasonable and helpful advice for the landowners as they prepare for the forthcoming intrusion onto their land.